IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LATANYA GRAHAM,                )
                               )
        Plaintiff,             )
                               )
v.                             )    CIV-18-376-R
                               )
CAC FINANCIAL CORP.,           )
                               )
        Defendant.             )

## ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiff (Doc. No. 20) and Defendant (Doc. No. 26) and the responses thereto.[1] Upon consideration of the parties' motions, the Court finds as follows.

At the outset, the Court notes the parties' failure to comply with the Federal Rules of Civil Procedure and the Court's Local Civil Rules. Specifically, Defendant's Motion for Summary Judgment sets forth seven individual facts which it contends are undisputed and entitle it to summary judgment.[2] (Doc. No. 26, pp. 3-5). In response thereto, Plaintiff sets forth six numbered paragraphs, none of which cite to any evidence, and indicates with regard to the first six of those paragraphs that the fact asserted by Defendant is "Disputed."

---

[1] Defendant submitted an untimely Reply brief on March 15, 2019, a day after the deadline for filing such brief. The untimely filing drew a Motion to Strike (Doc. No. 31) from Plaintiff. Defendant thereafter responded to the motion to strike, but never sought a retroactive extension of time in which to file the reply.

[2] Defendant's motion lacks compliance with Local Civil Rule 56.1(b), which mandates that "[t]he brief in support of a motion for summary judgment . . . shall begin with a section stating the material facts to which the movant contends no genuine dispute exists." Defendant's motion begins with a "Summary of the Argument" rather than the proper statement of facts. Plaintiff's motion and response brief both suffer from a similar shortcoming, two pages of her brief, including an introduction, precede the Table of Contents and Table of Authorities.

Plaintiff's response to paragraph 6 is "Undisputed"; she does not address paragraph 7.[3] Local Civil Rule 56.1(d) provides that "[e]ach individual statement by the . . . nonmovant pursuant to subparagraph . . . (c) of this rule shall be followed by citation, with particularity, to any evidentiary material that the party presents in support of its position pursuant to Fed. R. Civ. P. 56(c). In her response, Plaintiff cited no authority in the numbered paragraphs. She did, however, include her own affidavit in an effort to authenticate the evidence she submitted in support of her motion for summary judgment. Similarly, in Defendant's response to Plaintiff's motion any disputed fact was supported by reference to "Defendant's exhibits 1-6" or by failing to cite to any evidence.

The Court also notes that the affidavits executed by Scott Clift, submitted and relied upon by Defendant, reference exhibits that are either not presented to the Court or are misidentified.[4] Despite the numerous shortcomings in the parties' filings, the Court has

---

[3] Paragraph 7 states:

> CAC reported Plaintiff's account as disputed from the initial dispute and response on July 6, 2017 to the date CAC deleted Plaintiff's account from Equifax and TransUnion. **(See Affidavit of Scott Clift, Ex. 2 and Ex. 3 Equifax/TransUnion Deletion)**

Doc. No. 26, p. 5 (emphasis in original). Although Plaintiff did not respond, this failure will not entitle Defendant to summary judgment unless the evidence submitted by the parties supports the factual assertion.

[4] For example, in Mr. Clift's first Affidavit, executed on February 1, 2019 and attached to Defendant's Motion for Summary Judgment and to Defendant's Response to Plaintiff's Motion for Summary Judgment, he avers:

> CAC's account notes further document that upon completion of this investigation, CAC re-verified the information and reported the results of the investigation back to TransUnion that the debt was verified on July 26, 2017. As a result of the dispute and verification request, all data furnished by CAC, to Equifax, contains a Dispute indicator. I have viewed a copy of this report, and it is labeled as Plaintiff's Exhibit A, Page 1.

Doc. Nos. 26-2 and 27-2, p. 2. Plaintiff's exhibits are numbered rather than lettered, and Plaintiff's Exhibit 1, is a July 8, 2017 letter from Equifax regarding the results of a recent dispute. The Court further notes that Defendant did not provide the Court with its account notes for Ms. Graham's debt referenced throughout Mr. Clift's affidavits.

In a second affidavit dated February 22, 2019, Mr. Clift refers generically to Exhibits 1, Exhibit 5, and Exhibit 6, presumably the exhibits attached to Defendant's response brief. His affidavit, however, misidentifies the exhibits: for example, he states that Exhibit 6 represents communications from CAC to TransUnion, however, Exhibit 6 identifies itself as Equifax Communication Reports.

considered the submissions, all of which are designed to answer a single question: whether Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by failing to report a debt associated with Plaintiff as disputed to Equifax and TransUnion, two credit reporting agencies, after Plaintiff reported to the agencies that she believed she did not owe the debt.

The Court should grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

The FDCPA prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Under the FDCPA, Defendant has an obligation to report as disputed any accounts which it knew or should have known Plaintiff disputed. Defendant contends it fulfilled its obligation once made aware of Plaintiff's dispute via communication from Equifax and TransUnion. Plaintiff disagrees, providing the Court with redacted reports she allegedly received after the investigations were allegedly completed.

On June 5, 2017, Plaintiff applied for and was denied a mortgage. (Doc. No. 29-3, Graham Affidavit, ¶ 3). She asserts that she wrote two letters, one to Equifax and one to TransUnion, on June 7, 2017, disputing the accuracy of the debt. (Graham Affidavit, ¶ 6). Defendant admits it received a dispute related to Plaintiff from Equifax on July 6, 2017.

(Doc. No. 26-2, Clift February 1, 2019 Affidavit, ¶ 8). On behalf of Defendant, Mr. Clift avers that CAC verified the debt on July 6, 2017, asserting that "all data furnished by CAC, to Equifax, contains a Dispute indicator." (Clift February 1, 2019 Affidavit, ¶ 9). CAC admits it received a dispute from TransUnion related to Plaintiff's account on July 26, 2017, and that it verified the debt on that same date.

> CAC's account notes further document that upon completion of this investigation, CAC re-verified the information and reported it back to **TransUnion** that the debt was verified on July 26, 2017. As a result of the dispute and verification request, all data furnished by CAC, to **Equifax**, contains a Dispute indicator.

(Clift Affidavit, ¶ 12)(emphasis added). Paragraphs 14 and 15 of Clift's Affidavit report a second dispute from Equifax on July 27, 2017, which was allegedly verified to TransUnion on July 26, 2017. It would of course be impossible for CAC to verify the debt before the dispute was received from the credit reporting agency. Mr. Clift also avers:

> I am experienced in reading these reports from Equifax and TransUnion that are found in Plaintiff's Exhibit A. Upon review of these reports and for the purposes of investigation into Ms. Graham's allegations, I contacted a representative for the credit bureaus to confirm my interpretation of these reports that Ms. Graham's report was reported as disputed.

(Clift Affidavit, ¶ 17). This paragraph contradicts Mr. Clift's prior representations in the Affidavit that Plaintiff's Exhibit A was a report furnished by CAC to Equifax and TransUnion.[5]

It should be apparent that as a result of the shortcomings in the parties' submissions the Court cannot grant summary judgment for either Plaintiff or Defendant on the issue of

---

[5] In his February 22, 2019 Affidavit Mr. Clift states that Exhibits 1 and 2, which appear identical to those submitted by Defendant in support of its motion, are communications from CAC to Equifax and TransUnion. Again, in his February 1, 2019 affidavit Mr. Clift makes conflicting representations.

Defendant's liability under the FDCPA. Plaintiff has submitted select pages of a copy of an updated credit report she allegedly received from Equifax on July 7, 2017, after Defendant allegedly reported the dispute to Equifax. From the pages she submitted, the Court is unable to discern that the account was reported as disputed despite Mr. Clift's representations.[6] Additionally, Plaintiff presents portions of a July 7, 2017 letter from TransUnion regarding a recent dispute that includes reference to the CAC debt. Although it is not clear from the two pages, out of an apparent twelve, that the dispute was the present one, the Court must consider the evidence in the light most favorable to Plaintiff. In short, the parties' failure to properly and clearly support their motions prevent the Court from discerning that no genuine issues of material fact remain for resolution at trial, and accordingly, the parties' cross-motions for summary judgment are DENIED. The Court finds, however, that, in light of Plaintiff's failure to challenge Defendant's assertion that she lacks evidence to support her claim for actual damages, Plaintiff will be limited to statutory damages.[7]

---

[6] In keeping with the parties' poor submissions, Plaintiff's motion did not include an affidavit that authenticated any of her documentation. She has included an affidavit in response to Defendant's motion that cites to the documents submitted in support of her motion and indicates those documents are the ones she received from Trans Union and Equifax. Similarly, Defendant provides a second affidavit from Mr. Clift in response to Plaintiff's motion. This February 22, 2019, affidavit (Doc. No. 27-4), creates inconsistencies by failing to acknowledge the shortcomings in the original February 1, 2019 affidavit. The second affidavit contains inconsistencies with the exhibits identified in the brief. For example, paragraph 12 states that Exhibit 5 represents communications from CAC to Equifax on August 6, 2017, and September 17, 2017. Exhibit 5 is labeled "TransUnion Communication Reports" and there appear to be four reports, not two. The reports are undated lines of code, making it impossible for the Court to draw an independent conclusion as to what the lines are intended to convey or when the messages were sent. According to Mr. Clift the presence of "XB" on each page indicates the reporting of the debt as disputed and that he contacted the credit reporting agencies to verify his belief. Defendant did not, however, provide any evidence of the CRA's response that presumably verified Mr. Clift's understanding.

[7] In an affidavit submitted by Plaintiff in response to Defendant's motion she asserts that "CAC's inaccurate reporting caused undue stress on me. I became fearful of applying for credit and feared what people would think once they saw my credit." (Doc.No. 29-3). These vague statements are insufficient to support actual damages., especially given that the item was removed from Plaintiff's credit report in September 2017.

Within its motion for summary judgment Defendant sought sanctions under 28 U.S.C. § 1927, and this request is DENIED. Although Plaintiff failed to respond to the arguments, Defendant failed to establish that sanctions were appropriate and conveniently omits its own transgressions in reciting why the Court should impose sanctions against Ms. Graham. Plaintiff's Motion to Strike (Doc. No. 31) is GRANTED, Defendant having filed its Reply out of time without leave of Court, and failing to seek leave even after Plaintiff requested that the Court strike the brief.

IT IS SO ORDERED this 1st day of April 2019.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE